AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Southern District of Texas

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Jacoby Derrell Randall | ) | Case No. H17-0379M |
| | ) | |
| *Defendant(s)* | ) | |

David J. Bradley, Clerk of Court

United States Courts
Southern District of Texas
FILED
MAR 23 2017

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __3/23/2017__ in the county of __Harris__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C Section 201(b)(1) | Bribery by a federal employee |
| 18 U.S.C. Section 1791 | Providing or possessing contraband in prison |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

*Complainant's signature*

Kimberly Webster, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3-23-17

*Judge's signature*

City and state: Houston, Texas — Stephen Wm. Smith, US Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Your Affiant, Kimberly J. Webster, being duly sworn, deposes and says:

1. Since in or about August 2015 and up to March 22, 2017, in the Southern District of Texas, JACOBY DERRELL RANDALL, the defendant, and others known and unknown, willfully and knowingly violated Title 18, U.S.C., § 201(b)(1) and Title 18 USC § 1791(a)(1).

2. I am a Special Agent with the Federal Bureau of Investigation (FBI), currently assigned to the Houston Division. I have been so employed since November 2, 2014. For the majority of my time as a Special Agent, I have been assigned to a Public Corruption squad, charged with investigating antitrust violations, corruption of law enforcement officers, and various fraud violations. I have experience with cases in each of the aforementioned violations. I have experience in conducting surveillance, interviewing witnesses, executing search and arrest warrants, electronic surveillance, consensual monitoring, Title III wire intercepts, and other investigative techniques.

3. The facts in this affidavit are based upon my personal observations, and that of law enforcement officers who are jointly assigned to the investigation.

4. Because this affidavit is being submitted for the limited purpose of securing a Criminal Complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause that evidence of violations of 18 U.S.C. § 201(b)(1) and Title 18 USC § 1791(a)(1) on or about and between August 2015 and March 22, 2017 have been

1

committed by JACOBY DERRELL RANDALL. Where statements of others are set forth in this Affidavit, they are set forth in substance and in part.

## OVERVIEW

5. Since August 2016 and up to March 22, 2017, FBI Agents and other law enforcement officials in Houston, Texas, have been conducting a law enforcement corruption investigation into alleged misconduct by Correctional Officer JACOBY DERRELL RANDALL at the Joe Corley Detention Facility (hereinafter "JCDF"). As set forth in greater detail below, that investigation has included, among other things, numerous recorded meetings with an FBI Confidential Source (CS-1), several recorded telephone conversations, numerous interviews, and physical surveillance of RANDALL. The evidence shows that RANDALL has accepted monetary payment in exchange for smuggling drugs and other contraband to inmates at JCDF between August 2015 and March 22, 2017.

## THE INVESTIGATION

6. The JCDF is a private detention facility operated at 500 Hilbig Street, Conroe, Texas 77301. Conroe, Texas is located within the Southern District of Texas. The JCDF is contracted by the United States Marshal's service to house federal inmates.

7. On January 25, 2017, JASON DUNCAN, an inmate at JCDF, was interviewed by FBI Agents at the United States Federal Court Building located at 515 Rusk Street, Houston, Texas. DUNCAN has been housed at the JCDF since August 28, 2015, relating to a criminal charge involving the possession of a controlled substance. He was sentenced on

2

1/25/2017 by United States District Judge Keith P. Ellison, in the Southern District of Texas. DUNCAN informed the Agents that in early 2016, RANDALL informed him that he would bring anything into JCDF for him for a fee. RANDALL has since provided DUNCAN with contraband on approximately six to seven occasions, to include food and an MP3 player, provided to RANDALL by CS-1. On all but one occasion, CS-1 paid RANDALL $100 to smuggle in food to DUNCAN. On a separate occasion, CS-1 paid RANDALL $150 to smuggle in an MP3 player to DUNCAN. RANDALL advised that the additional $50 was to pay another co-worker to allow him to bring the MP3 player through the metal detectors.

8. On or about February 14, 2017, CS-1 and RANDALL spoke on the telephone. The conversation was recorded by CS-1. During the call, CS-1 advised RANDALL that DUNCAN wanted more food to be brought into him and questioned RANDALL regarding the current whereabouts of the MP3 player (previously mentioned in paragraph 7). RANDALL responded by saying he thought DUNCAN had to "trash that thing, I think, uh, they had a shake down in his tank, so he had, to get rid of that thing…"

9. On or about February 21, 2017, CS-1 and RANDALL communicated using a social media application. Subsequent to the social media conversation, CS-1 and RANDALL conducted a follow-up telephone call, recorded by CS-1, and RANDALL agreed to a future meeting where CS-1 would pay RANDALL $350 in exchange for him to smuggle a "phone watch" into JCDF for DUNCAN. On February 23, 2017, CS-1 met RANDALL at a Texaco gas station in Spring, Texas. Spring, Texas is located in the Southern District

of Texas. The meeting was recorded using audio and equipment and was subject to FBI surveillance. At the meeting, CS-1 provided RANDALL with $350 USC which constituted half of the payment for smuggling in the "phone watch" into the JCDF, as dictated by RANDALL.

10. On or about March 2, 2017, investigating Agents of the FBI met with the Warden and Assistant Warden of the JCDF to discuss the definition of contraband, in relation to the referenced "phone watch". The Wardens advised that any device that has wireless internet accessibility, Bluetooth technology, or cellular telephone/texting capabilities would be considered contraband.

11. On or about February 17, 2017, CS-1 had another conversation with RANDALL where CS-1 advised that he/she was working to gather additional funds to pay the remaining $350 balance for RANDALL to smuggle the watch into JCDF, as well as the money needed to purchase the watch. CS-1 asked RANDALL how he planned to smuggle the watch into the facility. RANDALL responded by saying he would wear the watch into JCDF and then give it to DUNCAN.

12. On or about March 3, 2017, CS-1 and RANDALL had a phone communication where they discussed the capabilities of the "phone watch." They specifically discussed the Samsung S3 watch and during the conversation, RANDALL looked up the watch on the internet to review its capabilities. RANDALL said he assumed there are prisoners who would know how to hack into and utilize the wireless internet system in the JCDF. He

also stated that, even as an employee, he was not authorized to have a cellular device in the JCDF. RANDALL again mentioned that he would wear the "phone watch" into the JCDF, instead of the watch he usually wears.

13. On or about March 17, 2017, CS-1 and RANDALL had a telephone communication in which they agreed to meet on Wednesday, March 22, 2017, where CS-1 would give RANDALL the "phone watch" requested by DUNCAN and the remaining $350 as payment for bringing the watch into JCDF.

14. On March 22, 2017, CS-1 and RANDALL met in the parking lot of Greenspoint Mall in Houston, Texas for RANDALL to take possession of the second $350 bribe payment and the "phone watch." Prior to the meeting, law enforcement officers provided CS-1 with $350 USC, the serial numbers of which were documented beforehand. CS-1 stated during the meeting with RANDALL that the payment constituted the remaining amount of the requested $700 he had charged to bring the "phone watch" into JCDF. CS-1 gave RANDALL the $350 and a Samsung S3 "phone watch." CS-1 also referenced the MP3 player RANDALL had previously brought into JCDF to give to DUNCAN. RANDALL said he did not have any problems getting the MP3 player into the JCDF and would not have a problem getting the watch in either. RANDALL also told CS-1 to make sure that CS-1 and DUNCAN did not refer to RANDALL by name during telephone conversations, due to the fact that inmate telephone conversations are recorded at the JCDF.

15. On March 22, 2017, RANDALL was arrested by FBI Houston after leaving the meeting. Incident to his arrest, RANDALL's vehicle was subject to an inventory search prior to being towed. During that inventory search, a .40 semi-automatic handgun was found in the glovebox, the Samsung S3 "phone watch" and charger provided by CS-1 was found on the front seat. At the time of his arrest, RANDALL was searched by law enforcement officers. The $350, with serial numbers matching the numbers which were documented prior to the meeting, was recovered from his pants pocket.

16. Based upon the information delineated above, I believe that probable cause exists for the issuance of a Criminal Complaint and Arrest Warrant charging JACOBY DERRELL RANDALL with violations of 18 U.S.C. § 201(b)(1) and Title 18 USC § 1791(a)(1).

*[signature]*
Kimberly Webster
Special Agent, FBI

*[signature]*
USMJ Stephen Wm Smith
March 23, 2017